UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

TERRESTAR CORPORATION, *et al.*,

                              Debtors.

Chapter 11

Case No. 11-10612 (SHL)

Jointly Administered

------------------------------------------------------------x

ALDO ISMAEL PEREZ

                              Plaintiff,

   v.

TERRESTAR CORPORATION, *et al.*,

                              Defendants.

Adv. Proc. No. 13-01334 (SHL)

------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S :**

**HOLLAND & KNIGHT**
*Counsel to Aldo Ismael Perez*
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
  By:  Juan C. Zorrilla, Esq.[1]

**AKIN GUMP STRAUSS HAUER & FELD LLP**
*Counsel to the Debtors*
One Bryant Park
New York, New York 10036
  By:  Ira S. Dizengoff, Esq.
       Arik Preis, Esq.
       Joseph L. Sorkin, Esq.
       Nicholas P. Stabile, Esq.

     -and-

---

[1] Subsequent to oral argument, counsel filed a motion to withdraw from representation of Mr. Perez in this matter, which was granted by order dated September 2, 2015. (ECF No. 39).

1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
  By:  Sarah Link Schultz, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the Debtors' motion to dismiss the second amended complaint (ECF No. 18-30) (the "Complaint") of the Plaintiff, Aldo Ismael Perez, in the above-captioned adversary proceeding. Pursuant to Section 1144 of the Bankruptcy Code, the Complaint seeks to revoke this Court's order confirming the Debtors' plan of reorganization on the basis that the order was procured by fraud. The Defendants argue, among other things, that the Complaint is equitably moot. For the reasons set forth below, the Defendants' motion is granted and the Complaint is dismissed.

## BACKGROUND

Prior to its bankruptcy filing, Terrestar Corporation ("TSC") and its affiliates held equity interests in several companies that operated a terrestrial satellite network and provided two-way mobile and Internet communications services. On October 19, 2010 and February 16, 2011, TSC and certain of its affiliates (collectively, the "TSC Debtors") filed petitions for relief under Chapter 11 of the Bankruptcy Code. The Plaintiff is a former common shareholder of the TSC Debtors and owned 220,000 shares of TSC's common stock as of February 16, 2011. Compl. ¶ 7.

The Plaintiff filed numerous motions and objections throughout the TSC bankruptcy proceedings, as well as in the related Chapter 11 case of Terrestar Networks, Inc., Case No. 10-15446. Pleadings filed by Mr. Perez in the TSC Debtors' cases include several requests for the appointment of an equity committee and/or an examiner in the TSC Debtors' cases, which were denied. (Case No. 11-10612, ECF Nos. 157, 180, 216, 217). Mr. Perez sought reconsideration

1

of this Court's order denying his motion to appoint an examiner, which was also denied. (*See* Hr'g Tr. 65:3-73:21, Nov. 16, 2011; ECF Nos. 232, 290). Mr. Perez subsequently filed numerous objections to the TSC Debtors' second amended disclosure statement (the "Disclosure Statement") (Case No. 11-10612, ECF Nos. 157, 207, 216, 331), which the Court heard and overruled, ultimately approving the Disclosure Statement on August 24, 2012. Mr. Perez then filed a pleading requesting a stay of the "financial disclosure," which this Court construed as a request to stay the order approving the Disclosure Statement until the District Court ruled on Mr. Perez's examiner appeal. (Case No. 11-10612, ECF No. 386). The Court denied Mr. Perez's motion to stay pending appeal. *See Memorandum Opinion and Order Denying Request for Stay Pending Appeal*, Case No. 11-10612, ECF No. 442. Numerous issues were raised by Mr. Perez and considered by the Court in the litigation of these various pleadings.

On June 27, 2012, TSC filed its third amended joint chapter 11 plan of reorganization (the "Plan"), to which the Plaintiff filed multiple objections. (*See* Case No. 11-10612, ECF Nos. 556, 639, 661, 664). Mr. Perez's filings raised, among other issues, objections to the failure to auction off certain of the TSC Debtors' assets, questions regarding the TSC Debtors' asset valuation and the feasibility of the Plan, and objections to the third-party releases contained in the Plan. *See id.* A hearing on confirmation of the Plan was held before the Court on October 10, 2012 (the "Confirmation Hearing"). Mr. Perez appeared on his own behalf and argued against confirmation. He also cross-examined Steven Zelin of Blackstone Group, the TSC Debtors' financial advisor. *See* Hr'g Tr. 88:18-89:7 (Oct. 10, 2012). During the hearing, Mr. Perez again raised issues regarding the valuation of TSC assets and alleged that insider transactions and fraud had taken place. At the conclusion of the hearing, the Court overruled Perez's objections, along with several other *pro se* objections, and confirmed the TSC Debtors' Plan. *See* Hr'g Tr. 121:7-135:17 (Oct. 10, 2015). On October 24, 2012, the Court entered an

2

order confirming the Plan (the "Confirmation Order"). (Case No. 11-10612, ECF No. 668). The Plan subsequently became effective on March 7, 2013. (Case No. 11-10612, ECF No. 734).

Mr. Perez has twice appealed orders of this Court. In both instances, the District Court for the Southern District of New York found Mr. Perez's appeals equitably moot. Mr. Perez first appealed this Court's order denying reconsideration of a request to appoint an examiner. The District Court dismissed the appeal as equitably moot, finding that the Plan had been substantially consummated and that Mr. Perez had failed to rebut the presumption of mootness. *Perez v. Terrestar Corp. (In re Terrestar Corp.)*, 2013 U.S. Dist. LEXIS 58814, at *12-14 (S.D.N.Y. April 24, 2013) (Abrams, J.). The District Court specifically noted that the relief sought by Mr. Perez would "require unraveling intricate transactions and cause harm to the vitality of Reorganized TSC." *Id.* at *16. Mr. Perez next appealed the Confirmation Order. The District Court again dismissed the appeal as equitably moot, as the Plan had been substantially consummated. *Perez v. Terrestar Corp. (In re Terrestar Corp.)*, 2013 U.S. Dist. LEXIS 118918, at *10-11 (S.D.N.Y. Aug. 16, 2013) (Daniels, J.).

On April 22, 2013 Plaintiff filed this adversary proceeding seeking to revoke the Confirmation Order pursuant to Section 1144 of the Bankruptcy Code. By leave of the Court, he filed the second amended complaint in May 2014. In that Complaint, Plaintiff again alleges that TSC violated a duty to disclose certain facts in the Plan and Disclosure Statement and seeks revocation of the Confirmation Order. In their motion to dismiss, the TSC Debtors argue that the Plaintiff's complaint is equitably moot, that Plaintiff is collaterally estopped from raising allegations that have already been addressed in earlier proceedings, and that Plaintiff has failed to adequately plead that the Confirmation Plan was procured by fraud under Bankruptcy Code Section 1144.

3

**DISCUSSION**

Equitable mootness is "'a prudential doctrine . . . that is invoked to avoid disturbing a reorganization plan once implemented.'" *R2 Invs. LDC v. Charter Commc'ns Inc.* (*In re Charter Commc'ns Inc.*), 449 B.R. 14, 22 (S.D.N.Y. 2011) (quoting *Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co.* (*In re Chateaugay Corp.*), 988 F.2d 322, 325 (2d Cir. 1993)). The doctrine "is not an Article III inquiry into whether a live case or controversy exists, but rather a recognition that there is a point beyond which a court cannot order fundamental changes in reorganization actions." *Bank of New York Trust Co. v. Pacific Lumber Co.* (*In re ScoPac*), 624 F.3d 274, 281 (5th Cir. 2010). While the equitable mootness doctrine is often dealt with on appeal, it has also been applied in proceedings under Section 1144 of the Bankruptcy Code. *See, e.g., In re Delta Air Lines, Inc.,* 386 B.R. 518, 537 n.15, 538 (Bankr. S.D.N.Y. 2008) (citing cases).

The doctrine of equitable mootness arises from a "common-sense notion that the piecemeal dismantling of the [r]eorganization [p]lan in subsequent appeals of individual transactions is, in practical terms if nothing else, a virtually impossible task." *In re Texaco Inc.,* 92 B.R. 38, 46 (Bankr. S.D.N.Y. 1988) (internal citations and quotations omitted). "In certain situations, it may be highly impractical for a court to undo a reorganization plan due to the complex nature of the transactions involved." *In re Delta,* 386 B.R. at 537. For instance, the Second Circuit has held that equitable mootness applies where a vacatur and remand would unsettle critical components of a reorganization or require completed transactions to be undone, causing violence to such overall arrangements. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 145 (2d Cir. 2005).

4

An appeal is presumed to be equitably moot once a debtor's plan of reorganization has been substantially consummated. *See R2 Invs. LDC v. Charter Commc'ns Inc.* (*In re Charter Commc'ns Inc.*), 691 F.3d 476, 482 (2d Cir. 2012). A plan is considered substantially consummated where: (1) all or substantially all of the proposed property transfers in a plan have taken place, (2) the successor company has assumed the business or management of the property dealt with by the plan, and (3) the distributions established in the plan have commenced. *See* 11 U.S.C. § 1101(2).

The presumption of equitable mootness can be rebutted through the five factor test established by the case of *In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993). The burden is on the party contesting equitable mootness to show that each of the following circumstances exist:

> (a) the court can still order some effective relief;
> (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity;
> (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court;
> (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and
> (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

*Id.* at 952-53 (internal citations and quotations omitted).

Applying these principles here, the Court finds that Mr. Perez's action is equitably moot because TSC's Plan has been substantially consummated. The Confirmation Order was entered on October 24, 2012, and the Plan became effective on March 7, 2013. Plaintiff filed his initial complaint on April 22, 2013, exactly 180 days after the Confirmation Order was entered. He then filed the Second Amended Complaint in May 2014, over a year and half after confirmation of the Plan.

5

But by April 24, 2013, the District Court had already ruled that the TSC Plan was substantially consummated. In a written decision on Mr. Perez's first appeal, the District Court specifically found that substantial consummation had occurred based on:

- the reorganization of TSC as a 'new, privately held corporation' . . . including the adoption of bylaws and appointment of a board of directors;
- the cancellation of preferred and common stock in TSC;
- entry into 'an approximately $27 million loan designed to finance Reorganized TSC's operations and to fund ongoing chapter 11 activities' . . . ;
- 'distribution to substantially all secured and unsecured creditors with allowed claims under the Plan';
- repayment of a $4.5 million loan . . . provided by certain TSC preferred shareholders in November 2010; and
- transfer of control of TerrStar Holdings 1.4 Holdings, which holds the license to the 1.4 GHz spectrum, to Reorganized TSC.

*Perez v. Terrestar Corp. (In re Terrestar Corp.)*, 2013 U.S. Dist. LEXIS 58814, at *12-13 (S.D.N.Y. April 24, 2013) (Abrams, J.). In a written decision on Mr. Perez's second appeal, another Judge of the District Court also found that the TSC Plan was substantially consummated, based upon:

- The cancellation of preferred and common stock in TSC, and the delisting of the formerly-public common shares;
- The reorganization of TSC as a new privately held corporation pursuant to an amended and restated certificate of incorporation and new bylaws
- The merger of certain TSC debtors pursuant to a series of certificates of merger;
- The process of issuing and distributing the new common stock in the reorganized company;
- The transferring of property from each TSC Debtor estate to each respective reorganized TSC entity;
- The entry into an approximately $27 million loan (the "Exit Facility") designed to finance Reorganized TSC's operations, repay its debtor-in-possession financing, fund certain settlements that the TSC Debtors reached with certain of its creditors and fund other ongoing Chapter 11 activities, including $6.3 million of payments to various creditors;
- The repayment of millions of dollars in loans provided by certain TSC preferred shareholders;
- The transfer of control of TerreStar Holdings 1.4 GHz spectrum (the subsidiary that held the licenses), to Reorganized TSC, including FCC approval for the transfer of the spectrum licenses;

6

- The first meeting of the board occurred on March 26, 2013, and the officers of the reorganized company took their seats.

*Perez v. Terrestar Corp. (In re Terrestar Corp.)*, 2013 U.S. Dist. LEXIS 118918, at *10-11 (S.D.N.Y. Aug. 16, 2013) (Daniels, J.).

The findings of the District Court are the law of the case. The law of the case doctrine provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal citations and quotations omitted). It also applies to the "re-litigation of an issue at the appellate level." *Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). "[T]he law of the case doctrine is, at best, a discretionary doctrine which does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." *Brody v. Vill. of Port Chester*, 345 F.3d 103, 110 (2d Cir. 2003) (internal citations and quotations omitted). The law of the case doctrine applies here on the question of equitable mootness. *See Free-Tan Corp. v. 49-50 Assocs. (In re Liberty Music & Video, Inc.)*, 1985 U.S. Dist. LEXIS 15016, at *7-8 (S.D.N.Y. Oct. 11, 1985) (holding prior appellate decision addressing identical issue as was before the court to be law of the case); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, 2010 WL 396252, at *6 (Bankr. D. Vt. Jan. 25, 2010) ("Since different adversary proceedings filed in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case.") (citing *Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir. 1990); *Artra Group, Inc. v. Salomon Bros. Holding Co.*, 1996 WL 637595, at *5 (N.D. Ill. Oct. 31, 1996); *In re Gosman*, 382 B.R. 826, 841-42 (S.D. Fla. 2007)); *see also In re E.R. Fegert, Inc.*, 887 F.2d 955, 957-58 (9th Cir. 1989) ("Whether these facts were supported by the record in this adversary

7

proceeding is unclear; however, all of the facts are supported by the record of the underlying bankruptcy matter. . . . 'The record in an adversary proceeding in bankruptcy presumes and in large measure relies upon the file in the underlying case. . . .'") (quoting *Berge v. Sweet (In re Berge)*, 37 B.R. 705, 708 (W.D. Wis. 1983)); *Citizens Bank v. Leach (In re Leach)*, 35 B.R. 100, 101-02 & n.5 (Bankr. W.D. Ky. 1983) (bankruptcy judge's use of "entire file" is consistent with the Federal Rules of Evidence given connections between a "case" and a "proceeding") (citing *Leather Comfort Corp. v. Chem. Sales & Serv. Co.* (*In re Saco*), 30 B.R. 862, 865 (Bankr. D. Me. 1983) ("[B]ankruptcy judges would be remiss" if they did not take judicial notice of the debtor's bankruptcy case as a whole, including the documents filed in the case because of bankruptcy's unique interrelated multi-part nature and duty to "notice . . . records and files in [the] cause . . . ."); *cf Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("The doctrine of the law of the case posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case. Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication.") (internal citations and quotation marks omitted).

The sum of TSC's actions since entry of the Confirmation Order (issuing new common stock, preparing the required FCC application, finalizing the exit facility and performing the restructuring transactions) complies with the definition of "substantially consummated" established in Section 1101 of the Bankruptcy Code. As two different District Court Judges have already concluded, the TSC Debtors' Plan was substantially consummated since at least April 24, 2013. Additionally, because numerous transactions had taken place in reliance on the Plan, the Plaintiff's Complaint is equitably moot as it would be inequitable to revoke the Confirmation Order for TSC, creditors, banks, and numerous other interested parties. As the current adversary

8

proceeding raises the same concerns previously raised and reviewed twice by the District Court, equitable mootness provides a basis for granting the motion to dismiss.

The Plaintiff fails to rebut the presumption of equitable mootness through the five *Chateaugay* factors. Indeed, the Plaintiff does not even address the factors in his voluminous pleadings. In any event, none of them appear satisfied. As to the first three factors, there is no way for this Court to provide the Plaintiff effective relief. *See Chateaugay*, 10 F.3d at 952-53. Revocation of the Confirmation Order would require the TSC Debtors to claw back over $6 million in payments to creditors, causing problematic common stock ramifications for preferred shareholders. Additionally any relief granted would be wholly inequitable as complicated financial, legal, and operational questions would surface, resulting in a need for additional review and litigation. Inquiries into transactions that occurred prior to and since consummation of the Plan would create an unmanageable and uncontrollable situation for this Court. For these reasons, even if this Court could provide relief, the Plaintiff has not met the standard established in the second and third factors of *Chateaugay,* barring revocation of the Plan. *See id.*

With regard to the fourth and fifth *Chateaugay* factors, the Plaintiff failed to give notice of the Complaint to all parties who would be adversely affected by a potential revocation of the Plan, ultimately denying key party members, such as preferred shareholders and creditors, a chance to participate and object to the proceedings. The Plaintiff also failed to seek a stay of the Plan after the entry of the Confirmation Order on October 24, 2012. Instead the Plaintiff appealed the Confirmation Order on January 25, 2013 and, as noted above, the appeal was dismissed by the District Court. *See In re Terrestar*, 2013 U.S. Dist. LEXIS 118918. The Plaintiff's failure to seek a stay of the Confirmation Plan, failure to address and provide compelling arguments addressing the five *Chateaugay* factors and the substantial consummation of the TSC Debtors' Plan all support a finding that the Complaint is equitably moot.

Citing to *In re Trico Marine Services, Inc.*, 337 B.R. 811 (Bankr. S.D.N.Y. 2006), the Plaintiff argues that the standard for equitable mootness in a Section 1144 action must be set at a higher bar. The Plaintiff argues that the test should focus solely on whether the confirmation order can be revoked while still protecting innocent third parties. But even if this were the test, Mr. Perez has failed to show that innocent third parties would be protected were the Confirmation Order to be revoked. In a conclusory fashion, the Plaintiff argues that only bad actors would be negatively impacted by revocation. He focuses solely on those parties that received new common stock and states that they were all purportedly "involved in the perpetrating of the fraud alleged in the Second Amended Complaint." *See* Plaintiff's Response at 16. But this is an overly simplified view of the case. It does not address those unsecured creditors that have long ago received recoveries under the Plan. Mr. Perez simply argues that such unsecured creditors have not been identified or that "there would be at least $1.9 million available to pay these creditors, assuming that they are innocent third parties." *Id.* at 21. But these simplistic assumptions are insufficient to support the argument that no innocent third parties will be harmed.

In addition to equitable mootness, the Complaint fails because it does not comply with the statutory requirements. Section 1144 of the Bankruptcy Code, provides the *only* means by which a court can revoke an order confirming a Chapter 11 plan. *See In re Delta,* 386 B.R. at 532 (citing *In re Longardner & Assoc., Inc.*, 855 F.2d 455, 460 (7th Cir. 1988)). The statute provides that:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

    (2) revoke the discharge of the debtor.

11 U.S.C. § 1144.  The decision of whether to revoke a confirmation order pursuant to Section 1144 rests in the sound discretion of the court.  *See In re Delta,* 386 B.R. at 532 (noting "[t]he importance of the auxiliary verb 'may'" in the statute), and a court can decline to revoke an order of confirmation even if it was procured by fraud.  *See id.* (citing *Salsberg v. Trico Marine Servs. (In re Trico Marine Servs.)*, 343 B.R. 68, 74 (Bankr. S.D.N.Y. 2006) (dismissing an action brought under Section 1144 because even if the plaintiff could prove fraud, the court could not fashion a remedy that met the requirements of Section 1144); *Ogden v. Ogden Modulars (In re Ogden Modulars)*, 180 B.R. 544, 547 (Bankr. D. Mo. 1995); 8 Collier on Bankruptcy ¶ 1144.03[4] at 1144–5 (15th ed. rev. 2006) ("[T]he court may decline to revoke the order even after finding that fraud has occurred.")).

    The statute's language states that an order revoking confirmation "shall---(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation. . . ." 11 U.S.C. § 1144.  This language is non-discretionary, and any order revoking confirmation must protect *all* innocent parties. *See In re Delta,* 386 B.R. at 532. If a court is unable to create a revocation order that protects innocent parties who acquired rights in reliance on the confirmation order, the court is barred from revoking the confirmation order, even when procured by fraud.  *See id.*; *see also In re Trico Marine*, 337 B.R. at 814 (court cannot revoke the plan unless it can restore the status quo existing before confirmation and protect those who relied in good faith on the confirmation).  As noted above, the Plaintiff does not explain— and the Court can see no way—to guarantee the rights of any innocent unsecured creditors that acquired rights in reliance on the Confirmation Order.  It matters not how many such parties exist or the amount of their recovery, as the language of Section 1144 is clear that the Court

11

lacks discretion unless it can craft an order that "protect[s] any entity acquiring rights in good faith." 11 U.S.C. § 1144.

In addition, the delay in filing this lawsuit weighs against the Court's exercise of its discretion under Section 1144. The statute provides a distinct time frame for when such causes of actions must be filed, requiring that a request to revoke the confirmation order be made "*before* 180 days after the date of the entry of the order of confirmation." 11 U.S.C. § 1144 (emphasis added). The deadline is absolute and cannot be extended by the court. *See In re BGI, Inc. f/k/a Borders Group Inc.,* 2012 WL 5392208, at *3 (Bankr. S.D.N.Y. Nov. 2, 2012); *see also In re Delta*, 386 B.R. at 532-33 (citing *In re Orange Tree Assocs.,* 961 F.2d 1445, 1447 (9th Cir. 1992); *In re Medical Analytics, Inc.,* 410 F. Supp. 922, 923 (S.D.N.Y. 1975) (holding that the 180–day period runs from the date of the confirmation order, even if the fraud was not discovered during that time period)). In cases involving complicated reorganization plans that impact more interested parties, the time frame should be shortened because of increased difficulty in protecting innocent third parties. *See In re Delta,* 386 B.R. at 533. The Plaintiff here filed this adversary proceeding to revoke the Confirmation Order on April 22, 2013, which is the 180th day following the entry of the Confirmation Order. The Plan was approved on October 24, 2012. At no point throughout the subsequent three month period did the Plaintiff seek a stay of the Confirmation Order. For the reasons stated in the *Delta* case, it is not at all clear that the Plaintiff complied with the letter of the law because he did not file *before* the 180th day. *See Delta*, 386 B.R. at 533 n.11. In any event, he certainly failed to comply with its spirit. *See id*. at 533.

Finally, the Court notes that many of the arguments raised in the Complaint were previously raised and rejected by this Court and, therefore, may not be reargued here. *See Allen v. McCurry*, 449 U.S. 90, 94, (1980); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) ("[A]

12

final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action."); *In re Crispo*, 1997 WL 258482, at *7 (Bankr. S.D.N.Y. May 13, 1997) ("*Res judicata* thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes.")  Most notably, this includes allegations regarding the value of the TSC assets.  *See* Hr'g Tr. 122:13-127:11, Oct. 10, 2012 (Court ruling at Confirmation Hearing on valuation objections regarding the 1.4 GHz spectrum); Compl. ¶¶ 99-117 (raising arguments regarding the value of the 1.4 GHz spectrum).[2]  Mr. Perez's Complaint also includes allegations regarding events in cases other than the TSC bankruptcy, none of which are properly before this Court.  *See* Compl. ¶¶ 84-98 (raising issues regarding the sale of the 2.0 GHz spectrum in the Terrestar Networks bankruptcy proceeding); *see also* Hr'g Tr., 115:7-25, Oct. 10, 2012 (the Court noting at Confirmation Hearing that TSN was a different case that had already been confirmed).[3]

---

[2]     The 1.4 GHz spectrum was the subject of valuation testimony during the Confirmation Hearing by Steven Zelin of Blackstone Advisors, the TSC Debtors' financial advisor. Mr. Zelin both submitted a declaration in support of confirmation and testified on behalf of the TSC Debtors about the uses of the 1.4 GHz Spectrum and disagreed with the notion that the asset could be used in alternative ways without modification. *See Decl. of Steven Zelin in Support of Confirmation of the Third Amended Joint Chapter 11 Plan* ¶¶ 12-16 (Case No. 11-10612, ECF No. 650); Hr'g Tr. 82:13-84:25, 91:5-23, 93:5-16, Oct. 10, 2012. The Plaintiff now argues that Mr. Zelin presented an overly limited use for the 1.4 GHz Spectrum asset which contributed to the undervaluation.  Relying on a report issued by an entity named Jarvinian, the Plaintiff contends that there were other known uses for 1.4 GHz Spectrum that would create a higher valuation for the asset. But the Jarvinian report was released on September 13, 2013, almost a year after the Confirmation Hearing, and the Plaintiff does not plausibly explain how this newer report could serve as a basis to impeach the older value. Moreover, it would be improper and incredibly inefficient for courts to reconsider cases based on information about valuation provided after the fact. If such subsequent valuations were to be considered, it would require bankruptcy courts to constantly revisit sales and confirmations, something prohibited under the doctrine of *res judicata*. Moreover, Mr. Perez does not meet the pleadings requirements with respect to his allegations regarding the valuation of the 1.4 GHz spectrum. Mr. Perez asserts that the Jarvinian report discloses other feasible uses for the 1.4 GHz spectrum that would result in "significantly" higher valuation of the spectrum and that the TSC Debtors concealed these uses from the Court. Compl. ¶¶ 108, 111. But Mr. Perez does not provide allegations sufficient to show that the TSC Debtors had such information available to them at the time of the hearing on confirmation of the Plan. Indeed, Mr. Perez admits in the Complaint that the achievability of these uses would have required both regulatory modifications by the Federal Communications Commission and the acquisition of additional spectrum by the TSC Debtors. Compl. ¶¶ 112-13, 116. The TSC Debtors based their valuation on the circumstances that existed at the time of the hearing on confirmation of the Plan. This does not constitute fraud on the Court.

[3]     The Complaint also contains allegations that are unrelated to the actual confirmation of the Plan. These include the Plaintiff's allegations that the Debtors fabricated venue for the filing of the bankruptcy. *See* Compl. ¶ 15. The Plaintiff does not plausibly allege any basis for relief from the Confirmation Order under Section 1144

13

## **CONCLUSION**

For all the reasons set forth above, the Court concludes that the Debtors' motion to dismiss should be granted and Mr. Perez's Second Amended Complaint should be dismissed under the doctrine of equitable mootness and for failure to meet the standard for revocation of the Confirmation Order under Section 1144 of the Bankruptcy Code. The Debtors should settle an order on three days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon Mr. Perez.

Dated: New York, New York
September 29, 2015

*/s/ Sean H. Lane*
UNITED STATES BANKRUPTCY JUDGE

---

based on venue. *See In re AP Indus., Inc.*, 117 B.R. 789, 797 (Bankr. S.D.N.Y. 1990) (stating "venue statutes are not jurisdictional" and thus, objections to venue are waivable); *see also Morgenstein v. Motors Liquidation Co. (In re Motors Liquid. Co.),* 462 B.R. 494, 505–06 (Bankr. S.D.N.Y. 2012) (noting that claims of fraud under Section 1144 of the Bankruptcy Code must meet the heightened pleading standard for fraud under Rule 9(b) of the Federal Rules of Civil Procedure and that conclusory allegations or speculation are not sufficient to meet the pleading standard for Rule 9(b)).